# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) Chesapeake Energy Corporation,<br><br>Plaintiff,<br><br>v.<br><br>(1) The United States of America,<br><br>Defendant. | Case No. CIV-20-934-J |

# ORIGINAL COMPLAINT

This case stems from a painstaking tax dispute between Chesapeake and the IRS over admittedly complicated issues for the tax years 2010–2013.[1] After much negotiation and a formal mediation process, Chesapeake and the IRS ultimately agreed to mutually resolve these tax issues.

This resolution is documented in several documents and, like most settlements, it went Chesapeake's way on some aspects and the IRS's way on others. For example, to the IRS's benefit, Chesapeake agreed to transform $50 million in special net operating losses into ordinary net operating losses for alternative minimum tax purposes, the result of which was up to $10 million in potential future value loss for Chesapeake. As part of the compromise, the IRS agreed that Chesapeake would only owe a single tax deficiency of approximately $7.5 million for the tax year 2012 (but no deficiency for

---

[1] "IRS" refers to the Internal Revenue Service of the United States of America, and "Chesapeake" refers to Plaintiff Chesapeake Energy Corporation.

2010, 2012, 2013), plus interest on that 2012 deficiency. Chesapeake held up its end of that bargain and promptly paid the agreed-to tax deficiency, plus interest on that deficiency.

But the IRS didn't hold up its end: just a few weeks later, the IRS sent Chesapeake assessments of additional interest, ultimately totaling over $12.5 million—nearly **ten times** the *interest* amount Chesapeake had already paid and nearly **two times** the *principal* amount of the agreed-to tax deficiency. This stance flouts the agreement between the parties, which only required Chesapeake to pay interest on the approximately ~$7.5 million agreed-to deficiency.

Had the IRS's revised stance been the case, Chesapeake would have never conceded its $50 million in special net operating losses, losing up to $10 million in potential value. The IRS, however, apparently wants it both ways: it took this potential value from Chesapeake, plus other concessions, and then turned around and assessed interest in violation of the parties' agreements. Unfortunately, to avoid growing liabilities as a result of the IRS's unfounded position, Chesapeake was forced to pay the punitive and erroneous interest assessments before it could then seek a refund. Chesapeake now brings this action to obtain that refund, which is required by the parties' binding agreement.

## PARTIES

1. Chesapeake is an Oklahoma corporation with its executive office and principal place of business located at 6100 N. Western Avenue, Oklahoma City, OK, 73118. Chesapeake's employer identification number is 73-1395733.

2. The Defendant is the United States of America.

## JURISDICTION & VENUE

3. This Court has original jurisdiction under 28 U.S.C. § 1346(a)(1). Chesapeake has complied with all administrative procedures and other precedents for filing this cause of action. *See* 26 U.S.C. § 7422.

4. Venue is proper in this Court under 28 U.S.C. § 1402(a)(2) because Chesapeake's executive office and principal place of business is located in Oklahoma City, Oklahoma.

## TAX REFUND FOR 2012 (COUNT I)

**A.   Audit at IRS Exam**

5. Chesapeake fully incorporates the preceding allegations.

6. The examination function ("Exam") of the IRS conducted an audit of Chesapeake's U.S. consolidated group federal income tax ("tax") returns for each of tax years 2010–2013.

7. In 2010, Chesapeake incurred net hedging losses of $2,063,903,351 from hedging transactions used to hedge the sales of oil and gas, which it included in gross

income under Section 57(a)(2)(C) of the Internal Revenue Code of 1986 (the "Code"), as in effect in 2010 on Chesapeake's originally filed tax return for 2010.

8.      In 2011, Chesapeake incurred net hedging gains of $1,461,187,047 from hedging transactions used to hedge the sales of oil and gas, which it included in gross income under Section 57(a)(2)(C) of the Code as in effect in 2011 on Chesapeake's originally filed tax return for 2011.

9.      In 2012, Chesapeake incurred net hedging gains of $356,277,739 from hedging transactions used to hedge the sale of oil and gas, which it included in gross income under Section 57(a)(2)(C) of the Code as in effect in 2012 on Chesapeake's originally filed tax return for 2012.

10.     In 2013, Chesapeake incurred net hedging losses of $67,897,077 from hedging transactions used to hedge the sale of oil and gas, which it included in gross income under Section 57(a)(2)(C) of the Code as in effect in 2013 on Chesapeake's originally filed tax return for 2013.

11.     Exam agreed that Chesapeake incurred the amounts set forth above as net hedging gains or losses in tax years 2010–2013, respectively, from hedging transactions used to hedge the sales of oil and gas, but Exam disagreed that these were appropriately included in Chesapeake's gross income under Section 57(a)(2)(C) of the Code in 2010–2013 (the "Hedging Issue").

12. In the years at issue, corporations, including Chesapeake, were required to compute their tax liability for both regular tax purposes and for alternative minimum tax ("AMT") purposes.

13. Resolution of the Hedging Issue impacted how Chesapeake would compute its AMT liability for each of tax years 2010–2013.

14. Chesapeake made an election on its tax return for 2009 under Section 172(b)(1)(H) of the Code (the "Section 172(b)(1)(H) Election") with respect to AMT net operating losses ("AMT NOLs") arising in 2009 ("Special AMT NOLs") to treat such AMT NOLs as subject to a special AMT NOL ordering rule set forth in Section 172(b)(1)(H) of the Code ("Special AMT NOL Ordering Rule").

15. Section 172(b)(1)(H) of the Code was amended as a result of the Worker, Homeownership, and Business Assistance Act of 2009, which was enacted as part of a stimulus package to respond to the recession of 2008 and 2009.

16. As a result of the Section 172(b)(1)(H) Election, in completing its original tax returns for each of tax years 2010–2012, Chesapeake absorbed its Special AMT NOLs only after all other AMT NOLs for other years had been fully absorbed to the full extent permitted under Section 56(d)(1)(A)(i) of the Code.

17. Exam disagreed that Chesapeake could absorb its Special AMT NOLs only after all other AMT NOLs for other years had been fully absorbed to the full extent under Section 56(d)(1)(A)(i) of the Code (the "Special AMT NOL Ordering Rule Issue").

**B.     Exam Appeals**

18.     Chesapeake fully incorporates the preceding allegations.

19.     Chesapeake filed a Protest to appeal Exam's conclusion on the Hedging Issue and on the Special AMT NOL Ordering Rule Issue with the IRS Independent Office of Appeals ("Appeals").

20.     After both a traditional conference with Appeals and a mediation with Appeals (a "post-Appeals mediation" or a "PAM"), Chesapeake and Appeals reached a compromise on both the Hedging Issue and the Special AMT NOL Ordering Issue.

21.     Chesapeake and Appeals agreed at the PAM to settle the Special AMT NOL Ordering Issue 75%-25% in Chesapeake's favor and to settle the Hedging Issue 85%-15% in favor of the IRS.

**C.     Final Agreement Reached Between Chesapeake and Appeals**

22.     Chesapeake fully incorporates the preceding allegations.

23.     The settlement of the Special AMT NOL Ordering Rule Issue was difficult to reduce to a written agreement because Chesapeake and Appeals didn't agree on a consistent computational methodology relating to the order of utilization of Special AMT NOLs. The computational methodology issue was the crux of the disagreement between Chesapeake and Appeals on the Special AMT NOL Ordering Rule Issue.

24.     Under Chesapeake's interpretation, the Special AMT NOL Ordering Rule Issue required that Chesapeake's initial original tax lability and utilization of tax

attributes for Chesapeake's 2012 tax year must be recomputed after subsequent years' final tax results were determined. In contrast, Appeals believed that recomputation was unnecessary.

25. Under Chesapeake's interpretation of the Special AMT NOL Ordering Rule Issue, it wasn't possible to know Chesapeake's final original tax liability or its use of tax attributes for 2012 until after December 31, 2012. In contrast, Appeals believed that it was possible to know Chesapeake's final original tax liability for 2012 by December 31, 2012.

26. Under Chesapeake's interpretation of the Special AMT NOL Ordering Rule Issue, Chesapeake's original tax liability and utilization of tax attributes for Chesapeake's 2012 tax year was required to be recomputed after the final tax results of subsequent years became known. In contrast, Appeals believed that no recomputation was needed of Chesapeake's 2012 tax year after final results of subsequent years became known.

27. To resolve the differences in interpretations of the Special AMT NOL Ordering Rule between Chesapeake and Appeals, Chesapeake and Appeals agreed to specific deficiency amounts (if any) for each of tax years 2010–2013 as a single amount for each year.

28. Chesapeake and Appeals agreed to a single deficiency amount of $7,466,599 for 2012, upon which Chesapeake would singularly owe interest, and to no deficiency amounts for 2010, 2011, or 2013.

29.     Chesapeake and Appeals also agreed that Chesapeake would forego the right to use any Special AMT NOLs after its 2014 tax years and that it would only be able to utilize such NOLS as regular AMT NOLs.

30.     The agreement reached between Appeals and Chesapeake is memorialized in documents which the IRS sent to Chesapeake. Thereafter, the IRS and Chesapeake jointly executed an IRS Closing Agreement (the "Closing Agreement") and an IRS Form 870-AD ("Form 870-AD").

31.     Under the agreement, Appeals and Chesapeake agreed that Chesapeake had no tax deficiency (or refund) for 2010, 2011, or 2013, but that Chesapeake had a single tax deficiency of $7,466,599 for 2012, upon which Chesapeake would singularly owe interest, as reflected on the executed Form 870-AD.

32.     The Closing Agreement recited that Chesapeake and Appeals also agreed that Chesapeake would forego the right to use any Special AMT NOLs after its 2014 tax years and that it would only be able to utilize such NOLS as regular AMT NOLs. By so doing, Chesapeake agreed upon the amount of available AMT NOLs attributes for utilization in future tax years.

33.     This concession by Chesapeake embodied $50 million worth of Special AMT NOLs, representing up to $10 million in forfeited potential future value to Chesapeake.

34. The Closing Agreement also recited that Chesapeake and Appeals had different methodologies for how to compute resolution of the AMT NOL Issue consistent with a 75%-25% resolution in favor of Chesapeake. To bridge what were irreconcilable computational methods, the Closing Agreement set forth the agreed upon compromise computational method, not otherwise provided by the Tax Code or IRS regulations, for the sole purpose of computing a single deficiency amount to reflect the compromise reached by the parties.

35. On April 17, 2018, Chesapeake paid $8,854,573 to satisfy in full the 2012 deficiency of $7,466,599, along with accrued interest of $1,387,974, prior to receiving a notice of assessment from the IRS.

36. On or about May 9, 2018, Chesapeake received a letter from the IRS dated May 1, 2018, accompanied by an IRS Form 490 Activity Summary that referenced a Form 2285 and reflected an amount due of $11,963,864.62.

37. On or about May 11, 2018, Chesapeake received a copy of the IRS Form 2285, dated January 2, 2018, which was referenced in the IRS Form 490.

38. Chesapeake received a notice dated May 28, 2018, which reflected a liability of $11,963,864.62 for additional interest relating to the 2012 tax year.

**D.   IRS Erroneously Assesses Interest in Contradiction of the Agreement**

39. Chesapeake fully incorporates the preceding allegations.

40. The Form 2285 computed Chesapeake's 2012 AMT liability and 2013 AMT NOL using inputs and a computational methodology that were not agreed to and that were inconsistent with the agreement between the parties.

41. The Form 2285 erroneously reflected amounts for Chesapeake's 2012 AMT income, Chesapeake's 2012 AMT liability, and Chesapeake's 2013 AMT NOL to be carried back to Chesapeake's 2012 tax year, which lead to the erroneous computation of interest due from Chesapeake on the 2012 tax deficiency of $7,466,569.

42. Additionally, Chesapeake and Appeals also agreed that Chesapeake must utilize all AMT NOLs in 2012 to the extent of AMT income for such year. Yet, under the methodology of the Form 2285, the IRS erroneously concluded that Chesapeake had unused Special AMT NOLs in 2012 that were to be left unutilized against positive AMT income for 2012. The methodology on the Form 2285 thus violated not only the agreement between the parties, but also Section 172 of the Code as in effect for 2012 as to how net operating losses should be utilized.

43. The Form 2285 reflected that Chesapeake had AMT income in 2012, before adjustments for AMT NOL carryforwards or carrybacks, of $1,638,556,894 that resulted in an AMT deficiency in 2012 of $327,185,005. The Form 2285 also reflected that Chesapeake had an AMT NOL to carryback from 2013 of $1,509,427,461 and an AMT NOL carryover of $157,770,562 that were to be carried back and carried forward, respectively, to Chesapeake's 2012 tax year to reduce Chesapeake's AMT deficiency in 2012 to $7,466,599.

44.    As required by the agreement between the parties, Chesapeake's 2012 AMT tax liability subject to interest should have been $7,446,599 and not $327,185,005 as reflected on the Form 2285.

45.    Because of the erroneous manner in which Form 2285 computed Chesapeake's AMT tax liability and AMT NOLs in 2012 and 2013, the IRS erroneously computed that Chesapeake owed an additional amount of $11,963,864.62 as of May 1, 2018, relating to interest that accrued under the erroneous theory of the Form 2285 on the AMT deficiency in 2012 of $327,185,005 that existed before the carryback of the AMT NOL from 2013 of $1,509,427,461.

46.    If Chesapeake's AMT tax liability is correctly computed for 2012 to be $7,446,599, as required by the agreement between the parties, Chesapeake owed no additional interest for 2012 beyond interest due on the assessed amount of $7,446,559, which was already paid by Chesapeake on April 17, 2018.

47.    Despite clear violation of the agreement between the parties, on or about March 15, 2019, Chesapeake paid interest of $11,963,864.62 attributable to the alleged tax underpayment for its 2012 tax year.

48.    In a notice dated July 1, 2019, Chesapeake was assessed additional interest of $680,904.05 attributable to its 2012 tax year.

49.    Despite clear violation of the agreement between the parties, on or about July 11, 2019, Chesapeake paid additional interest of $680,904.05 attributable to its 2012 tax year.

### E. Amended Return and Claim for Refund

50. Chesapeake fully incorporates the preceding allegations.

51. On or about August 6, 2019, Chesapeake timely filed with the IRS an amended IRS Form 1120X (Amended U.S. Corporate Income Tax Return) for the 2012 taxable year (the "2012 Refund Claim"). Therein, Chesapeake claimed a refund of $332,363,175 (including the two payments of interest Chesapeake made totaling $12,644,769). Chesapeake paid interest in the total amount of $12,644,769 based on the erroneous theory of Form 2285.

52. Under the erroneous theory of the Form 2285, the IRS carried back an AMT NOL from 2013 of $1,597,923,744 to Chesapeake's 2012 tax year to reduce Chesapeake's alleged AMT deficiency in 2012 to $7,446,599; the refund Chesapeake seeks, net of such carryback, is $12,644,769.

53. If the Form 2285 had correctly implemented the agreement between the parties, the $12,644,769 of interest would not have been assessed against or owed by Chesapeake.

54. More than six months has elapsed since the 2012 Refund Claim was filed and no action has been taken by the IRS with respect to the 2012 Refund Claim. Chesapeake has not waived the notice of disallowance with respect to the 2012 Refund Claim. Accordingly, this action is timely commenced with respect to the 2012 Refund Claim under 26 U.S.C. § 6532(a).

55.     No action on this claim for refund has been taken by Congress or by any department or agency of the United States of America or in any judicial proceeding, including any proceeding in the Tax Court of the United States of America.

### ERRONEOUS COMPUTATION OF INTEREST (COUNT II)

56.     Chesapeake fully incorporates the preceding allegations and pleads the following in the alternative to Count I.

57.     Even if interest on Chesapeake's 2012 tax deficiency should have been computed under the methodology employed on Form 2285 (which it shouldn't have been, as set forth in Count I), the IRS failed to compute its interest properly even under its own methodology.

58.     To compute the interest the IRS imposed on Chesapeake, the methodology on Form 2285 relied upon AMT income and AMT liability amounts, not by reference to the agreement between the parties relating to the compromise computational method utilized to derive a single deficiency amount, but instead by reference to the position of Exam, which was not sustained by Appeals.

59.     Even if the methodology on Form 2285 were correct (which it isn't), the IRS should have used the AMT income and AMT liability amounts used as part of the compromise computational method utilized to derive a single deficiency amount that had been agreed to by the parties.

60.     To remedy this error, the $327,711,279 on line 4 of Form 2285 should be replaced with $310,012,123.

61. As an alternative to Count I, Chesapeake's interest should have been $13,455,725 instead of $14,032,742.

62. As an alternative to Count I and without waiver of any claims, Chesapeake alternatively seeks a refund of $577,017.

63. More than six months has elapsed since the 2012 Refund Claim was filed and no action has been taken by the IRS with respect to such 2012 Refund Claim. Chesapeake has not waived the notice of disallowance with respect to the 2012 Refund Claim. Accordingly, this action is timely commenced with respect to the 2012 Refund Claim under 26 U.S.C. § 6532(a).

64. No action on this claim for refund has been taken by Congress or by any department or agency of the United States of America or in any judicial proceeding, including any proceeding in the Tax Court of the United States of America.

## PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiff Chesapeake Energy Corporation requests that the Court enter judgment:

    A.    Awarding Chesapeake recovery of income tax refund from the United States in an amount of at least $332,363,175 (including the payment of interest Chesapeake made of $12,644,769) for Chesapeake's 2012 tax year;

    B.    Such refund amount of at least $332,363,175 should then be reduced to account for the AMT NOL carryback from 2013 of $1,597,923,744 that

      the IRS applied to Chesapeake's 2012 tax year, thereby producing a net refund to Chesapeake for its 2012 tax year, taking into account such carryback, of $12,644,769 (or as an alternative, at least a refund for 2012 at least equal to $577,017);

C.    Awarding Chesapeake interest as provided by law;

D.    Awarding Chesapeake its reasonable costs and expenses incurred in this action, including attorney's fees; and

E.    Such other further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Under Fed. R. Civ. P. 38, Plaintiff demands a jury trial on all matters so triable.

                Respectfully Submitted,

                */s/ Reagan E. Bradford*
                Reagan E. Bradford, OBA #22072
                Ryan K. Wilson, OBA #33306
                BRADFORD & WILSON PLLC
                431 W. Main Street, Suite D
                Oklahoma City, OK 73102
                (405) 698-2770
                (405) 234-5506 fax
                reagan@bradwil.com
                ryan@bradwil.com

                *Attorneys for Chesapeake Energy Corporation*