IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| CHESAPEAKE ENERGY CORP., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 20-CV-934-J |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

**BRIEF IN SUPPORT OF UNITED STATES' MOTION
FOR PARTIAL SUMMARY JUDGMENT**

ROBERT J. TROESTER
United States Attorney

DAVID A. HUBBERT
Deputy Assistant Attorney General
Tax Division

GREGORY E. VAN HOEY
Maryland Bar
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C. 20044
202-307-6391 (tel.)
202-514-6770 (fax)
gregory.van.hoey@usdoj.gov

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................ ii

TABLE OF AUTHORITIES ............................................................................... iii

INTRODUCTION ............................................................................................... 1

STATEMENT OF UNDISPUTED MATERIAL FACTS .................................... 1

ARGUMENT ...................................................................................................... 7

   I.  Background on Closing Agreements and Restricted Interest ...................... 8

     A.  Closing Agreements ........................................................................ 8

     B.  Restricted Interest .......................................................................... 10

  II.  Chesapeake Is Not Entitled to a $12.4 Million Interest Refund ............. 12

     A.  The IRS Did Not Waive Restricted Interest in the Closing Agreement .............. 12

     B.  The IRS Did Not Agree to Override Federal Law by Assessing Interest Using Only a Single Deficiency Amount ............................................................. 14

CONCLUSION................................................................................................... 17

# TABLE OF AUTHORITIES

## Cases

*Benson v. United States*,
  934 F. Supp. 365 (D. Colo. 1996), *aff'd,* 120 F.3d 270 (10th Cir. 1997) ............... 8, 13

*DecisionOne Holdings Corp. v. United States*,
  1996 WL 773320 (Fed. Cl. 1996) .................................................................... 11, 15, 16

*Ellinger v. United States*,
  470 F.3d 1325 (11th Cir. 2006) ..................................................................................... 9

*In re Moser*,
  25 F. App'x 161 (4th Cir. 2002) (per curiam) ........................................................... 11

*In re Spendthrift Farm, Inc.*,
  931 F.2d 405 (6th Cir. 1991) ................................................................................. 11, 13

*Pan American Van Lines v. United States*,
  607 F.2d 1299 (9th Cir. 1979) ..................................................................................... 11

*United States v. Beane*,
  841 F.3d 1273 (11th Cir. 2016) ................................................................................... 15

*United States v. ConocoPhillips Co.*,
  744 F.3d 1199 (10th Cir. 2014) ............................................................................... 9, 12

*Urbano v. Commissioner*,
  122 T.C. 384 (2004) ..................................................................................................... 16

*Vail Resorts, Inc. v. United States*,
  2011 WL 2621361 (D. Colo. 2011) ......................................................................... 9, 12

## Statutes

26 U.S.C. § 56(d)(1)(A) .................................................................................................... 2

26 U.S.C. § 57(a)(2)(C) .................................................................................................... 2

26 U.S.C. § 172 .............................................................................................................. 10

26 U.S.C. § 6072(b) ........................................................................................................ 10

26 U.S.C. § 6601 ............................................................................................... 2, 7, 12, 16

26 U.S.C. § 6601(a) ................................................................................................ 5, 6, 10

26 U.S.C. § 6601(d) ...................................................................................................... 11

26 U.S.C. § 6601(d)(1) ........................................................................................... *passim*

26 U.S.C. § 7121 ...................................................................................................... 8, 13

26 U.S.C. § 7121(b) ................................................................................................... 9, 12

26 U.S.C. § 7122 ............................................................................................................ 8

26 U.S.C. § 7421 ......................................................................................................... 16

28 U.S.C. § 1346(a)(1) ................................................................................................... 1

28 U.S.C. § 1402(a)(2) ................................................................................................... 1

**Regulations**

26 C.F.R. § 301.6601-1(e) ........................................................................................... 10

26 C.F.R. § 601.202(b) ................................................................................................... 8

**Other Authorities**

Arthur H. Boelter, *Tax Penalties and Interest* § 11.23 .................................................... 11

Mertens *Law of Federal Income Taxation* § 52:3 .......................................................... 9

Rev. Proc. 60-17, 1960 WL 12206 ................................................................................. 11

**INTRODUCTION**

Although the details of Plaintiff's federal income tax audit for 2010 through 2013 are undoubtedly complex, the narrow dispute presented in this contract-interpretation case is relatively straightforward.  Chesapeake Energy Corporation claims that the Internal Revenue Service charged it too much interest by following procedures dictated by federal tax law instead of the terms of a settlement agreement that ultimately determined Chesapeake's income tax liability for 2012.  However, the undisputed facts unambiguously show that the settlement agreement did not address the issue of interest computation and that the IRS used the appropriate calculation method provided by law.  Therefore, the Court should grant summary judgment to the United States on Count I of Chesapeake's complaint and deny its claim for a refund of interest in the amount of $12,644,769.

Under the undisputed facts set forth below, the United States contends that the Court has subject matter jurisdiction under 28 U.S.C. § 1346(a)(1) and that venue is proper under 28 U.S.C. § 1402(a)(2).

**STATEMENT OF UNDISPUTED MATERIAL FACTS**

1.      Chesapeake Energy Corporation is an Oklahoma corporation with its principal place of business in Oklahoma City, Oklahoma.  (Complaint (Doc. 1) & Answer (Doc. 10) ¶ 1.)

2.      The Internal Revenue Service conducted an audit examination of Chesapeake's Form 1120 federal income tax returns for 2010-2013.  (Complaint & Answer ¶ 6.)

3.      Chesapeake submitted a protest to the IRS Independent Office of Appeals concerning the IRS audit examination team's conclusions with respect to two issues. (Complaint & Answer ¶ 19.)

4.      The first issue was whether Chesapeake's net gains and losses from certain hedging transactions in 2010-2013 were includible in its gross income from oil and gas properties under 26 U.S.C. § 57(a)(2)(C) (the "Hedging Issue").  (Complaint & Answer ¶¶ 7-11.)

5.      The second issue was the order in which certain alternative minimum tax (AMT) net operating losses (NOLs) could be deducted in 2010-2012 under 26 U.S.C. § 56(d)(1)(A) (the "Special AMT NOL Ordering Rule Issue").  (Complaint & Answer ¶¶ 14-17.)

6.      After both a traditional conference between representatives of Chesapeake and the IRS Appeals team and a post-Appeals mediation (PAM) with an independent mediator, in March 2018 Chesapeake and the IRS executed a Form 906 Closing Agreement.  (Ex. 1, Declaration of Sharon G. Johnson, ¶ 8; Ex. 2; Complaint & Answer ¶ 20.)

7.      The Closing Agreement provided the terms of settlement between Chesapeake and the IRS for the Hedging Issue and the Special AMT NOL Ordering Rule Issue.  (Ex. 1 ¶ 9; Ex. 2.)

8.      The Closing Agreement did not address the issue of any underpayment interest that Chesapeake might owe under 26 U.S.C. § 6601 on any federal income tax deficiencies for 2010-2013.  (Ex. 1 ¶ 10; Ex. 2.)

9.      The word "interest" does not appear anywhere in the Closing Agreement.  (Ex. 2.)

10.     Before its execution, Chesapeake and the IRS used the terms of the Closing Agreement to calculate a federal income tax deficiency for Chesapeake's 2012 tax year in the amount of $7,466,599.  Those calculations are contained within the Form 3610 Post Appeals Mediation (PAM) Audit Statement, and accompanying schedules, dated January 2, 2018.  (Ex. 1 ¶ 11; Ex. 3.)

11.     The IRS Appeals team provided the final version of the PAM Audit Statement to Chesapeake, which did not object to it.  (Ex. 1 ¶ 12.)

12.     Page 16 of the PAM Audit Statement ("Alternative Minimum Tax Based on PAM settlement") shows that the federal income tax deficiency of $7,466,599 for 2012 was calculated by carrying back an AMT NOL from 2013 and deducting it in 2012.  (Ex. 1 ¶ 13; Ex. 3 at 16.)

13.     Specifically, as shown in the excerpt below, Chesapeake's alternative minimum taxable income (AMTI) before alternative-minimum-tax net-operating-loss carrybacks (AMT NOL CB) of $1,550,060,614 was reduced by an AMT NOL CB for 2013 in the amount of $1,509,427,461, yielding a final AMTI of $40,663,152 (rounded).  Applying the 20% alternative minimum tax rate to that AMTI, and then subtracting a general business credit of $660,031, yielded a final tax deficiency for 2012 of $7,466,599.  (Ex. 1 ¶ 14; Ex. 3 at 16.)

**Chesapeake Energy Corporation and Subs.**
**Alternative Minimum Tax**
**Based on PAM settlement**

| AMT Contributions | 12/31/2004 | 12/31/2005 | 12/31/2006 | 12/31/2007 | 12/31/2008 | 12/31/2009 | 12/31/2010 | 12/31/2011 | 12/31/2012 | 12/31/2013 |
|---|---|---|---|---|---|---|---|---|---|---|
| | ... | ... | ... | ... | ... | ... | ... | ... | ... | ... |
| AMTI before AMT NOL CB | 33,310,169 | 60,977,844 | 50,279,503 | (141,240,463) | 796,597,600 | (1,253,931,738) | 0 | 202,590,082 | 1,550,060,614 | (1,856,448,493) |
| AMT NOL2009 CB | (16,655,085) | (60,977,844) | (50,279,503) | | (796,597,600) | | | | (202,590,082) | (1,509,427,461) |
| 2013 CB         per PAM settlement | | | | | | | | | | |
| AMTI as determined | 16,655,084 | 0 | 0 | (141,240,463) | 0 | (1,253,931,738) | 0 | 0 | 40,633,152 | (1,856,448,493) |
| TENTATIVE MINIMUM TAX - 20% OF ABOVE | 3,331,017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 8,126,630 | 0 |
| AMT Foreign Tax Credit | | | | | | | | | 0 | |
| General Business Credit | | | | | | | | | 660,031 | |
| DEFICIENCY | 3,331,017 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 7,466,599 | 0 |

14.     As shown in the excerpt below, Page 1 of the PAM Audit Statement noted:
"Restricted interest applies for 2012 and will continue to accrue on the deficiency until it
is paid in full."  (Ex. 1 ¶ 15; Ex. 3 at 1.)

| Tax Period Ended | DEFICIENCY (OVERASSESSMENT) *(Increase or decrease in Tax and Penalties)* | | | Total |
|---|---|---|---|---|
| | Tax | | | |
| 12/31/2010 | $0 | | | $0 |
| 12/31/2011 | $0 | | | $0 |
| 12/31/2012 | $7,466,599 | | | $7,466,599 |
| 12/31/2013 | $0 | | | $0 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| Total | $7,466,599 | | | $7,466,599 |

It is determined the deficiency for the taxable year 12/31/2012 is a large corporate underpayment
under section 6621(c) of the Internal Revenue Code. Accordingly, the annual rate of interest payable on your
income tax is two percentage points higher than the underpayment rate established under section 6621(a)
of the Internal Revenue Code.

Restricted interest applies for 2012 and will continue to accrue on the deficiency until it is paid in full.

15.     At or about the same time that Chesapeake and the IRS executed the Closing
Agreement, in March 2018, the IRS accepted Chesapeake's offer to consent to the
assessment and collection of a federal income tax deficiency for 2012 in the amount of
$7,466,599, as recorded on a Form 870-AD.  (Ex. 1 ¶ 16; Ex. 4.)

16.     The 2012 federal income tax deficiency of $7,466,599 listed on the Form 870-AD
had been calculated in accordance with the PAM Audit Statement.  (Ex. 1 ¶ 16.)

17.     As shown in the excerpt below, in the Form 870-AD, Chesapeake consented to the

assessment and collection of the $7,466,599 federal income tax deficiency for 2012 "with

interest as provided by law."  (Ex. 1 ¶ 18; Ex. 4 at 1.)

> Under the provisions of section 6213(d) of the Internal Revenue Code of 1986 (the Code), or corresponding provisions of prior internal revenue laws, the undersigned offers to waive the restrictions provided in section 6213(a) of the Code or corresponding provisions of prior internal revenue laws, and to consent to the assessment and collection of the following deficiencies and additions to tax, if any, with interest as provided by law. The undersigned offers also to accept the following overassessments, if any, as correct. Any waiver or acceptance of an overassessment is subject to any terms and conditions stated below and on the second page of this form.

18.     On April 17, 2018, prior to receiving a notice of assessment from the IRS,

Chesapeake paid $8,854,573 to the IRS to satisfy the 2012 federal income tax deficiency

of $7,466,599, along with accrued interest of $1,387,974 according to Chesapeake's own

interest calculation.  (Complaint & Answer ¶ 35.)

19.     Chesapeake did not apply 26 U.S.C. § 6601(d)(1) when it calculated its

underpayment interest on the 2012 tax deficiency to be $1,387,974.  Instead, in

computing its underpayment interest under 26 U.S.C. § 6601(a), Chesapeake calculated

interest on a single deficiency amount of $7,466,599.  (Complaint ¶¶ 44, 46.)

20.     The IRS applied 26 U.S.C. § 6601(d)(1) when it computed and assessed

underpayment interest on Chesapeake's 2012 tax deficiency under 26 U.S.C. § 6601(a).

(Ex. 1 ¶ 19.)

21.     Specifically, as shown on a Form 490 Activity Summary dated April 20, 2018, the

IRS first computed interest on a deficiency amount of $327,185,005, as determined

before the application of any AMT NOL carrybacks, from the filing date of Chesapeake's

2012 federal income tax return (March 15, 2013) until the filing date of its 2013 return

(March 15, 2014).  The IRS then computed interest on a deficiency amount of

$7,466,599, as determined after the application of AMT NOL carrybacks, from March 15, 2014, until April 27, 2018.  Those combined computations yielded a total interest amount of $13,351,826.47.  The IRS then subtracted Chesapeake's interest payment of $1,387,974 from that total (and made other minor adjustments) to yield a net interest due of $11,963,864.62.  (Ex. 1 ¶ 19; Ex. 5.)

22.     Chesapeake received an IRS notice of assessment dated May 28, 2018, which reflected a liability of $11,963,864.62 in interest for its 2012 tax year.  (Complaint ¶ 38.)

23.     On or about March 15, 2019, Chesapeake paid $11,963,864.62 to the IRS as interest attributable to its 2012 federal income tax deficiency.  (Complaint & Answer ¶ 47.)

24.     On or about July 11, 2019, Chesapeake paid $680,904.05 in additional interest to the IRS attributable to its 2012 federal income tax deficiency.  This interest covered the period from the late interest computation date in the Form 490 Activity Summary (April 27, 2018) until the date of payment. (Complaint & Answer ¶ 49.)

25.     Therefore, Chesapeake paid a total of $14,032,742 in underpayment interest under 26 U.S.C. § 6601(a) with respect to its 2012 federal income tax deficiency.  (Complaint & Answer ¶¶ 35, 47, 49.)

26.     On or about August 6, 2019, Chesapeake filed a Form 1120X (Amended U.S. Corporate Income Tax Return) with the IRS for its 2012 tax year.  On the Form 1120X, Chesapeake claimed a refund of $332,363,175.  Thar refund claim amount included the two interest payments that Chesapeake had made in March 2019 ($11,963,864.62) and July 2019 ($680,904.05), which sum to $12,644,769 (rounded).  (Complaint ¶ 51.)

27.     As of the date Chesapeake filed its complaint in this case (September 15, 2020),

the IRS had not rendered a decision on Chesapeake's Form 1120X refund claim.

(Complaint ¶ 54.)

28.     In Count I of its complaint in this case, Chesapeake seeks a net refund of the

$12,644,769 in underpayment interest that it paid to the IRS in 2019 with respect to its

2012 tax deficiency.  (Complaint at 14-15, ¶¶ A & B.)

29.     Chesapeake's complaint contains no allegations of fraud, malfeasance, or

misrepresentations of material facts by either Chesapeake or the IRS during the

negotiation and execution of the Closing Agreement.  (Doc. 1.)


## ARGUMENT

In Count I of its complaint, Chesapeake claims that it is entitled to a refund of

interest because the IRS allegedly agreed to assess interest against it under 26 U.S.C.

§ 6601 using only a single deficiency amount ($7,466,599) but then actually assessed

interest using two different deficiency amounts ($327,185,005 and $7,466,599).

(Complaint ¶¶ 28, 31, 44-49, 53.)  However, the undisputed facts show that the parties'

settlement agreement – called a "closing agreement" in tax parlance – did not encompass

the issue of underpayment interest.  (*Supra* ¶¶ 8-9.)  Given that contractual silence, the

IRS was legally bound to compute interest according to the Internal Revenue Code.

The undisputed facts also show that the IRS used the computation procedure

prescribed in 26 U.S.C. § 6601(d)(1), commonly called "restricted interest," which

requires the calculation of interest using different deficiency amounts when certain losses

are "carried back" to be deducted in a prior year.  (*Supra* ¶¶ 20-21.)  The IRS even

notified Chesapeake in writing that the tax deficiency would be assessed "with interest as

provided by law" and that restricted interest would apply.  (*Supra* ¶¶ 11, 14, 17.)  Yet

Chesapeake did not seek or obtain a written modification or amendment of the agreement

that would have allowed the IRS to waive the government's statutory right to restricted

interest.

Therefore, the Court should grant summary judgment to the United States on

Count I and find, as a matter of law, that the IRS did not breach the settlement agreement

and that Chesapeake is not entitled to a refund of $12,644,769 in underpayment interest.

Following a brief background section on closing agreements and restricted interest, we

proceed to explain in further detail why the Court should grant the Government's motion.


## I.  Background on Closing Agreements and Restricted Interest

A.  <u>Closing Agreements</u>

Closing agreements and compromises under 26 U.S.C. §§ 7121 and 7122,

respectively, are "the exclusive procedures for compromising tax liabilities" with the

IRS, and therefore any alleged settlement agreement with the IRS must comply with

those statutes and their associated regulations.  *Benson v. United States*, 934 F. Supp.

365, 368 (D. Colo. 1996), *aff'd,* 120 F.3d 270 (10th Cir. 1997).  For example, the terms

of closing agreements must be in writing and recited on the proper IRS form (either Form

866 or Form 906).  26 C.F.R. § 601.202(b); *Benson*, 934 F. Supp. at 369.  Duly executed

closing agreements are final and conclusive and may not be modified or set aside in

subsequent court proceedings "except upon a showing of fraud or malfeasance, or misrepresentation of a material fact."  26 U.S.C. § 7121(b).  The same is true for any assessments or payments made in accordance with a valid closing agreement.  *Id.*

The Tenth Circuit applies federal common law when analyzing IRS closing agreements.  *United States v. ConocoPhillips Co.*, 744 F.3d 1199, 1204 (10th Cir. 2014).  Under federal common law, courts "strictly construe a closing agreement and regard matters as settled only if they are 'specifically spelled out' in the document."  *Id.* (quoting *Ellinger v. United States,* 470 F.3d 1325, 1337 (11th Cir. 2006)).  In addition, if the terms of a closing agreement are clear and unambiguous then, as a matter of law, a court must enforce them as written and disregard any extrinsic (parol) evidence.  *Vail Resorts, Inc. v. United States*, 2011 WL 2621361, at *5 (D. Colo. 2011).  Closing agreements are thus treated as fully integrated contracts.  *Id.*

Finally, given the strict construction applied to closing agreements, they do not "implicitly preclude the imposition of otherwise applicable law."  14A Mertens *Law of Fed. Income Taxation* § 52:3.  "If the parties intend that a law will not apply, they must explicitly agree on that point in the closing agreement, and a closing agreement may be challenged on the grounds that it prevents the operation of a provision of law not specifically mentioned in the agreement."  *Id.*

B.  Restricted Interest

Section 6601(a) of the Internal Revenue Code provides that interest shall be paid on any amount of unpaid tax from the last date prescribed for payment of the tax until the date the tax is paid.  Section 6601(d)(1) further states:

> If the amount of any tax imposed by subtitle A is reduced by reason of a carryback of a net operating loss or net capital loss, such reduction in tax shall not affect the computation of interest under this section for the period ending with the filing date for the taxable year in which the net operating loss or net capital loss arises.
> 26 U.S.C. § 6601(d)(1); *see also* 26 C.F.R. § 301.6601-1(e).

To illustrate how subsection (d)(1) functions, suppose a corporate taxpayer underpaid its 2012 federal income taxes, payment of which was due on March 15, 2013,[1] by $100. Later, in 2013, the corporation incurred $200 of net operating losses (NOLs) that it could not use to further reduce its 2013 taxes.  So, it elected on its 2013 tax return (due with payment on March 15, 2014) to carry the NOLs back as a deduction against its 2012 taxes under 26 U.S.C. § 172.  At a hypothetical 20% tax rate, the corporation's tax deficiency for 2012 was thus reduced to $60 (i.e., $100 – (.20 x $200)) as of March 15, 2014.  The corporation paid the remaining $60 deficiency on March 15, 2015.  Under § 6601(d)(1), interest would be assessed against the corporation as follows.

| Deficiency Amount | Time for Which Interest is Assessed on that Deficiency Amount |
|---|---|
| $100 | March 15, 2013, to March 15, 2014 |
| $60 | March 16, 2014, to March 15, 2015 |

---

[1] Under prior law, corporate federal income tax returns were due on March 15 of the year following the tax year at issue.  26 U.S.C. § 6072(b) (2013).

In effect, the NOL carryback reduces the tax deficiency amount upon which interest is charged, but only for the time after which the NOL arose.  Before then, interest is charged on the (larger) deficiency amount without consideration of any NOL carrybacks, but only for a limited – or "restricted" – amount of time.  *See In re Moser*, 25 F. App'x 161, 164 (4th Cir. 2002) (per curiam) (explaining an interest calculation under § 6601(d)(1)).  Although the term is not expressly used in the Internal Revenue Code or regulations, interest assessed under 26 U.S.C. § 6601(d) has long been commonly known by the IRS, courts, and tax practitioners as "restricted interest."  *See, e.g.*, *In re Spendthrift Farm, Inc.*, 931 F.2d 405, 406 (6th Cir. 1991) (interest arising under 26 U.S.C. § 6601(d)(1) is known as restricted interest); *Pan Am. Van Lines v. United States*, 607 F.2d 1299, 1300 (9th Cir. 1979) (IRS assessed "restricted interest" under § 6601(d)(1)); *DecisionOne Holdings Corp. v. United States*, 1996 WL 773320, at *1 n.3 (Fed. Cl. 1996) ("Restricted interest is assessed when there is a carryback of a net operating loss that restricts the period for calculating interest on an earlier liability."); Rev. Proc. 60-17, 1960 WL 12206, at *1, 5-9 (NOL carrybacks created restricted interest under Internal Revenue Code of 1954); Arthur H. Boelter, *Tax Penalties and Interest* § 11.23 (interest accrual from due date of prior-year return until due date of return for year in which loss carryback arose "is often referred to as restricted interest").  Restricted interest under § 6601(d)(1) is the type of interest at issue in this case.  (*Supra* ¶¶ 12-14, 19-21.)

11

## II.  Chesapeake Is Not Entitled to a $12.4 Million Interest Refund

### A.  The IRS Did Not Waive Restricted Interest in the Closing Agreement

The Court should find as a matter of law that the IRS did not waive its statutory right to assess restricted interest under 26 U.S.C. § 6601(d)(1) by executing the Form 906 Closing Agreement with Chesapeake.  Such a waiver is unambiguously absent from the text of the Closing Agreement.  Indeed, the agreement does not even mention the word "interest" or § 6601.  (*Supra* ¶¶ 8-9.)  Its terms were clearly limited to the Hedging Issue and the Special AMT NOL Ordering Rule Issue.  Because the issue of underpayment interest was not specifically spelled out in the Closing Agreement, Chesapeake may not imply that the agreement precludes the application of § 6601(d)(1) or that the parties settled the interest issue.  *ConocoPhillips*, 744 F.3d at 1204; *Vail Resorts*, 2011 WL 2621361, at *5.  And given the absence of any fraud, malfeasance, or material misrepresentations by the parties, Chesapeake may not ask the Court to modify the Closing Agreement and create an interest term out of whole cloth.  26 U.S.C. § 7121(b).

Furthermore, as the written terms of the Closing Agreement clearly did not address interest, Chesapeake may not introduce extrinsic evidence beyond the four corners of the contract to suggest that it did.  *Vail Resorts*, 2011 WL 2621361, at *5.  For example, the unilateral beliefs of Chesapeake's tax advisors, oral conversations between its executives and IRS Appeals employees during settlement negotiations, and emails post-dating the Closing Agreement would all be inadmissible to vary the written terms of that fully integrated contract.  Nor may Chesapeake use extrinsic evidence to imply that it had reached some informal understanding or side-agreement with IRS employees

regarding how the IRS would compute interest on the 2012 tax deficiency.  Settlement communications that fail to meet the statutory and regulatory requirements of a formal closing agreement cannot bind the IRS with respect to a taxpayer's liabilities.  *Benson*, 934 F. Supp. at 368.

*In re Spendthrift Farm, Inc.*, 931 F.2d 405 (6th Cir. 1991), is instructive.  That case involved an objection by a bankrupt corporation to an IRS proof of claim for restricted interest caused by NOL carrybacks under § 6601(d)(1).  The corporation claimed that its tax attorney has raised the issue of restricted interest while negotiating a closing agreement under 26 U.S.C. § 7121 with an IRS appeals officer to settle the company's federal income tax liabilities.  It further claimed that certain edits it had made to the agreement meant that the IRS had waived its legal right to restricted interest, even though the IRS appeals officer had not understood the changes as affecting restricted interest.  *Spendthrift Farm*, 931 F.2d at 406.

The Sixth Circuit ruled in favor of the government.  The court held that, for the IRS to waive its statutory right to restricted interest, a closing agreement must contain a "specific waiver" to that effect because "closing agreements generally do not determine penalties and interest."  *Id*. at 407.  The court concluded that the IRS was entitled to collect restricted interest under § 6601(d)(1) because the plain language of the closing agreement unambiguously lacked any mention of interest or penalties.  *Id.*  For similar reasons, this Court should conclude likewise with respect to Chesapeake's closing agreement.

B.  <u>The IRS Did Not Agree to Override Federal Law by Assessing Interest Using Only a Single Deficiency Amount</u>

Because the Closing Agreement did not direct the IRS to figure interest on the 2012 deficiency in some agreed-upon manner, the IRS was obligated to compute the interest as provided by federal law.  The undisputed facts show that the ultimate deficiency amount of $7,466,599 was calculated by carrying back an AMT NOL from 2013 and deducting it in 2012.  (*Supra* ¶¶ 12-13.)  Therefore, the IRS used the computation process required by 26 U.S.C. § 6601(d)(1), also known as "restricted interest," which involves the calculation of interest using different deficiency amounts – *i.e.*, deficiencies before and after the application of subsequent-year NOLs.  (*Supra* ¶¶ 20-21.)  Thus, the Court should find as a matter of law that the IRS did not breach the Closing Agreement by exercising its statutory right to assess and collect restricted interest from Chesapeake on its 2012 tax deficiency.

Chesapeake insists that the existence of a "single deficiency amount" on the face of the Form 870-AD means that the IRS erred by applying § 6601(d)(1) to calculate interest.  (Complaint ¶¶ 28, 31.)  That is patently incorrect.  By its terms, the Form 870-AD merely constituted Chesapeake's consent to immediate assessment and collection of a tax deficiency.  (Ex. 4.)  It was not an agreement to deviate from the legally mandated method of interest calculation for deficiencies involving NOL carrybacks.  Quite the contrary, as Form 870-AD explicitly advises taxpayers that they are consenting to the assessment and collection of tax "with interest as provided by law."  (*Id*. at 1.)  Chesapeake errs by narrowly focusing on the presence of one deficiency number on the

form while ignoring *how* that number was calculated.  The use of NOL carrybacks in the deficiency calculation triggered the application of § 6601(d)(1) as a matter of law.

Caselaw is in accord with the Government's position.  For example, in *United States v. Beane*, 841 F.3d 1273 (11th Cir. 2016), a taxpayer alleged that the IRS was precluded by res judicata from seeking interest from him under § 6601(d)(1) in his bankruptcy proceeding.  He claimed that, because the Tax Court had previously determined that his 1998 tax deficiency was only the single amount of $1,359,361 – after applying an NOL carryback that arose in 2000 – the IRS could not later seek interest on a higher deficiency amount ($2,846,457) from April 15, 1998, through April 15, 2001, before the carryback had arisen.  *Beane*, 841 F.3d at 1278-79.

After examining how § 6601(d)(1) functions, *id.* at 1281-82, the Eleventh Circuit reversed the decisions of the district and bankruptcy courts and held for the government.  The court of appeals ruled that neither claim preclusion nor collateral estoppel applied because the interest issue was never actually litigated and decided by the Tax Court, which lacked jurisdiction to do so.  *Id.* at 1283-86.  In other words, given that the Tax Court's opinion did not address restricted interest, its mere recitation of a single deficiency amount did not preclude the IRS from calculating and assessing restricted interest using two deficiency amounts (*i.e.*, before and after application of carrybacks), as was legally required by § 6601(d)(1).

Similarly, in *DecisionOne Holdings Corp. v. United States*, 1996 WL 773320, at *1-2 (Fed. Cl. 1996), a corporate taxpayer claimed that the IRS had breached a settlement agreement embodied in a Form 870-AD by assessing restricted interest against it in

addition to the tax deficiency and interest stated on the form and in accompanying schedules.  The Court of Federal Claims granted the government's motion to dismiss the suit as barred by the Anti-Injunction Act, 26 U.S.C. § 7421, because neither of the recognized exceptions to the Act applied.  In holding one exception inapplicable because the taxpayer was not certain to succeed on the merits, the court reasoned that the silence of the Form 870-AD regarding restricted interest, along with its clause saying that the taxpayer consented to assessment of "interest as provided by law," indicated that the settlement agreement did not preclude the IRS from assessing restricted interest. *DecisionOne*, 1996 WL 773320, at *3-4.  After all, the court noted, "[r]estricted interest is specifically *provided by law* in the Internal Revenue Code.  I.R.C. § 6601."  *Id*. at *4 (emphasis in original).

Moreover, the IRS was under no legal obligation to notify Chesapeake about the possibility of § 6601(d)(1) restricted interest before executing the Closing Agreement and Form 870-AD.  In *Urbano v. Commissioner*, 122 T.C. 384, 393-94 (2004), the taxpayers argued that the IRS could not assess interest under § 6601(d)(1) because, after they had consented to an income-tax assessment, the IRS did not inform them of the interest assessment before it was made.  The Tax Court succinctly rejected that argument because there is "no provision in the Internal Revenue Code that would require any such prior notification."  *Id*. at 394.

Yet, in this case, the IRS did in fact alert Chesapeake that restricted interest would apply to the 2012 deficiency.  (*Supra* ¶¶ 11, 14.)  The warning was right there on the very first page of the PAM Audit Statement.  (Ex. 3 at 1.)  As a large, sophisticated company

16

that was netting billions of dollars in gains and losses from hedging transactions alone during this period (Complaint & Answer ¶¶ 7-10), Chesapeake certainly had the wherewithal to understand, through its tax advisors, what the IRS's notification meant. And if the prospect of a restricted interest assessment under § 6601(d)(1) was not pleasing to Chesapeake, then it had ample opportunity to negotiate on that issue and explicitly address the matter in the Closing Agreement.  The fact that Chesapeake neglected to do so means that the IRS was free to assess restricted interest, just as it had warned it would, under the authority of the Internal Revenue Code.

In sum, Chesapeake was not obligated to ask the IRS to waive the government's statutory right to restricted interest.  But after having declined to do so during its settlement negotiations, Chesapeake now may not ask this Court to undo the IRS's exercise of that right.  Chesapeake is stuck with the bargain that it struck.

## CONCLUSION

The material facts are undisputed, and the United States is entitled to judgment as a matter of law on Chesapeake's refund claim for $12,644,769.  For the reasons stated above, the United States requests that the Court grant its motion for summary judgment on Count I of the complaint.


Date:  April 8, 2022

        ROBERT J. TROESTER
        United States Attorney

        DAVID A. HUBBERT
        Deputy Assistant Attorney General
        Tax Division

/s/ Gregory E. Van Hoey
GREGORY E. VAN HOEY
Maryland Bar
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C. 20044
202-307-6391 (tel.)
202-514-6770 (fax)
gregory.van.hoey@usdoj.gov